[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This tax appeal came to this court by citation and recognizance and application dated June 11, 1993 and filed on June 18, 1993 as of record more fully appears, appealing from the ruling of the Board of Tax Review for the Town of Griswold as concerns the list of October 1, 1992.
An answer to the application dated August 9, 1993 was filed on August 10, 1993 and the matter claimed for hearing on August 17, 1993. There was an amendment to the application dated December 8, 1993 and filed December 9, 1993 seeking the same relief as in the original application but extending the same to include the list of October 1, 1992 and October 1, 1993 as well.
An answer to the amended application dated December 14, 1993 was filed on December 15, 1993.
The parties appeared before the court for trial on February 1, 1994.
The court makes the following findings of fact.
Robert Beaver is the general partnership manager and the general partner of the plaintiff.
Griswold Ashland contains a total of 30 units of which 21 are owned by the plaintiff. Plaintiff, on October 1, 1992 and October 1, 1993, was the owner of the premises known as Ashland Lake Condominiums located at 358 East Main Street, Town of Griswold, County of New London, State of Connecticut, acquired by deed dated December 31, 1985 and recorded January 2, 1986. Griswold Land Records, Volume 106, page 151.
The plaintiff furnished to the Assessor of the Town of Griswold all of the information requested by the Assessor as CT Page 2908 required by law relative to the assessment of said property. The Assessor implemented as of October 1, 1992 and October 1, 1993, a valuation of the condominium units for the Town of Griswold.
The plaintiff, within the time prescribed by law, duly appealed to the Board of Tax Review of the Town of Griswold for a reduction of the assessment made by the Assessor on the aforementioned lists. The Board of Tax Review made no change to the assessments of the Assessor.
The Assessor and the Board of Tax Review determined the assessed valuations of each of the plaintiff's units to be $37,310 as to the lists of October 1, 1992 and October 1, 1993.
The Griswold Ashland complex was built during the period 1968-1969 originally as apartment units. The plaintiff purchased the subject premises on December 31, 1985, and in May of 1988, dedicated and converted the units to a condominium status.
The plaintiff presently owns 21 units. Each unit has 880 interior square feet. Each unit contains a combination dining room-living room, kitchen, plus appliances (refrigerator and stove), two bedrooms on the second level and bath.
In December of 1992, one unit was sold for $50,000 after $10,000 to $12,000 was spent to upgrade the unit and meet fire code requirements.
There were no sales in 1991 nor any in 1993 nor in 1994 to date of trial.
In October of 1993, one unit that had been previously sold was foreclosed and auctioned off for $10,000.
The plaintiff rents out presently 18 of the units. Three other units are presently available to be rented.
The average monthly rental is $595 plus/minus. In 1985, the plaintiff paid $1,050,000 as the purchase price for the complex. The units have been listed with various real estate agents from time to time.
The plaintiff has offered the condominium units to CT Page 2909 some of the rental tenants but with no success. In 1988 when the changeover and dedication to condominiums was accomplished from an apartment complex status, the Assessor established new assessments as to each unit. Subsequently, there was an appeal taken and the court established an assessment figure of $18,000 per unit.
The plaintiff's expert was Christopher S. Buckley of Niantic. Buckley is a professional real estate appraiser of ten years experience, holds an A.S.A. designation from the American Society of Appraisers, is certified by the State of Connecticut, has performed between 500 and 700 residential appraisals and has testified in court on various occasions. Buckley has done other appraisals in Griswold and throughout the state, and in 1992, conducted between four and eleven condominium complex evaluations and appraisals.
Buckley explained the various appraisal methods recognized in the profession.
1. Cost approach
2. Sales comparison approach
3. Income capitalization approach
Buckley's valuation as to each unit was $18,762 fair market value on the income capitalization approach.
The cost approach could not be used because of common interest concerns. A lack of sales of bulk units precluded the sales comparison approach. Buckley considered, among other factors, general economic conditions in the area.
Defendant's expert witness was Steven Ferreira of Scituate, Rhode Island. Ferreira is employed by MMC, Inc. as an appraiser and has been so employed for 19 years.
Ferreira is a district manager for MMC, Inc., has a B.A. degree from Stonehill College, holds an ASA designation, has met various testing criteria and participates in ongoing job education. Ferreira is not a licensed appraiser in Connecticut.
Buckley and Ferreira agree as to physical description, square footage and general layout of the complex. Ferreira used CT Page 2910 the sales comparison approach in arriving at his figures. Ferreira did not consider holding costs in his valuation approach.
The defendant Town of Griswold is required to assess the real property at 70 percent of its "true and actual value" at October 1, 1992 and 1993. Connecticut General Statutes12-62a. This requires determination of the property's fair market value. 12-63.
When the Board of Tax Review did not reduce the decennial (not interim) assessment from $37,310 per unit, plaintiff appealed to this court, pursuant to Connecticut General Statutes 12-117a. Plaintiff had appealed a prior assessment and the court had reduced the assessment then no $18,000. While not res judicata, this judgment is some evidence of its value. Murphy v. Town of Fairfield, 3 Conn. Sup. 34, 35
(1935).
The market being what it is and has been, the last unit sold in December 1992, and only after $12,000 of improvements were made, with previous sales in 1990. (See Defendant's Exhibit 1, p. 22.) Now, with nine units in other hands, with the concordant multiple ownership of the common areas, the condominium declaration could not be undone by plaintiff to make the project an apartment complex. To treat the project as an apartment complex, with its higher assessment value, the change from condominiums must be probable in the near future, Stamford Apartments Co. v. Stamford, 203 Conn. 586, 592
(1987). In Stamford Apartments, as here, it is not probable. Id. at 593.
Chris Buckley, ASA, holding the highest license by the State of Connecticut to do appraisals, made an extensive, considered analysis, in evidence as Plaintiff's Exhibit A. He undertook to provide for improved markets (e.g., in assuming a 5 percent inflation in unit sale prices; see Exhibit A, p. It is inherently credible when it relates the fair market value per unit to be $18,762, Exhibit A, p. 51, based on the discounted cash flow analysis. This method has been upheld by the state Supreme Court in tax assessment cases. Newbury Commons Limited Partnership v. Stamford, 226 Conn. 92, 100
(1993). Stamford Apartments, supra, at 588 and 594. It takes into account the rate of sales, the revenue therefrom, holding costs, and the time value of money to give the more realistic CT Page 2911 value of the units hence its fair market value to potential purchaser(s), as admitted by Mr. Ferreira.
Defendant, on the other hand, offered only one witness, not licensed by the State of Connecticut to do appraisals, and no documentation from 1992. Defendant failed to produce the person conducting the revaluation for October 1992 and his notes. This permits the inference that the data collected and analysis performed — or the lack thereof would be unfavorable to defendant. Secondino v. New Haven Gas Co.,147 Conn. 672, 675 (1960).
Defendant's Exhibit 1 was prepared in 1994: it is dated January 12, 1994. Id., p. 7. This document did not exist when the revaluation amount was set, was not used to set the amount, and was created only for trial to support the number known ahead of its creation. It purports to use the sales comparison approach, but, as Mr. Ferreira admitted, "A lack of comparable sales data limits the effectiveness of this approach." Exhibit 1, p. 19. Defendant's approach presumes the units sell currently and are without cost, but of course sales are not, and have not been, forthcoming and the units bear costs, e.g., property taxes.
Defendant's witness violated his own report's directives in not discounting the cash flows. His report provides:
 Fair Value: Fair value is to be considered when abnormal marketing time is a concern. The current definition of fair value by the Office of the Comptroller of the Currency is:
 "Fair Value" is the cash price that might reasonably be anticipated in a current sale under all conditions requisite to a fair sale. . . When a current sale is unlikely — i.e., when it is unlikely that the sale can be completed within 12 months — the appraiser must discount all cash flows generated by the property to obtain the estimate of fair value.
Defendant's Exhibit 1, p. 14, emphasis added. In light of sales CT Page 2912 activity since 1990, it was unlikely that the units would sell currently, as admitted by defendant's witness. Accordingly, defendant's own evidence indicates that plaintiff's method is appropriate, and that defendant's was defective or incomplete when it did not discount the cash flows. Even for any particular unit, much less for a group of units, if it is unlikely to sell currently, the cash flows should be discounted, and the gross sale price is not the measure of value. Plaintiff's method is especially appropriate for condominiums as compared to the traditional, fee simple absolute, single-family per lot dwelling.
In any assessment case, the trial court is confronted with conflicting evidence as to value, and it is proper for the court to give credence to one expert over another. Newbury Commons, supra, at pp. 99-100. Plaintiff's appraisal and expert witness are the more timely, complete, without bias, considered and expert.
The prior assessment and valuation by the Board of Tax Review are as follows:
 October 1, 1991 Valuation of Unit Assessment Board of Tax Review
 1 $18,000 $37,310 2 $18,000 $37,310 4 $18,000 $37,310 5 $18,000 $37,310 6 $18,000 $37,310 9 $18,000 $37,310 10 $18,000 $37,310 11 $18,000 $37,310 12 $18,000 $37,310 13 $18,000 $37,310 16 $18,000 $37,310 19 $18,000 $37,310 20 $18,000 $37,310 22 $18,000 $37,310 23 $18,000 $37,310 24 $18,000 $37,310 25 $18,000 $37,310 26 $18,000 $37,310 28 $18,000 $37,310 29 $18,000 $37,310 30 $18,000 $37,310
CT Page 2913
In the opinion of plaintiff's expert Buckley, the fair market value to a single purchaser of the subject 21 condominium units taken together is $394,000. Plaintiff's Exhibit A.
The current assessment of each unit is $37,310 for a total assessment of the 21 units of $783,510.
All of the three recognized approaches as to fair market value, cost, sales comparison and income capitalization were considered by both appraisers.
The defendant's expert by the sales comparison approach established the fair market value of each of the 21 units to be $53,000 and the Assessor and Board of Tax Review adopting this figure arrived at the assessment figure of $37,310 per unit based on 70 percent of the fair market value.
Based on the October 1, 1991 assessment of $18,000, the court in the prior tax appeal of necessity must have made a determination of $26,000 plus/minus per unit as fair market value.
The court finds that circumstances have not so dramatically changed since the valuation established on the October 1, 1991 list as to justify the marked increase by the Assessor on the October 1, 1992 and October 1, 1993 list. While in the main, the court accepts the rationale and approach of the plaintiff as to valuation it finds the per unit fair market value of $18,762 too precipitous a reduction mindful of the general economic climate October 1, 1991 to October 1, 1993.
The court finds the $26,000 fair market value as to each unit that the court on an earlier tax appeal must have determined to be reasonable, true and accurate, a better benchmark.
Seventy percent of this value is $18,100 which is in conformity with the prior list. The amount of the current outstanding assessment established by the Board is not 70 percent of the market value of said property on October 1, 1992 and October 1, 1993.
It is in excess of said value and does not reflect the CT Page 2914 value of said property at 70 percent of current fair market value as required by law.
The court, having heard the parties, finds the issues for the plaintiff and the true and actual and fair market value of the property on the lists of October 1, 1992 and October 1, 1993 as to each unit to be $26,000.
It is adjudged that the Assessor of the Town correct the assessment against the plaintiff accordingly and that the tax collector correct the tax accordingly.
Austin, J.